# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0480-17T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

J.S.,

    Defendant-Appellant,

and

K.Y.,

    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF L.Y.,

    a Minor.

_____

        Argued June 5, 2018 — Decided June 22, 2018

        Before Judges Reisner, Mayer, and Mitterhoff.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Gloucester
        County, Docket No. FG-08-0046-16.

Eric R. Foley argued the cause for appellant (Law Offices of Afonso Baker Archie Foley, PC, attorneys; Eric R. Foley, on the brief).

Sara M. Gregory, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Nicholas Logothetis, Deputy Attorney General, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Melissa R. Vance, on the brief).

PER CURIAM

Defendant J.S.[1] appeals from a July 28, 2017 judgment of guardianship terminating his parental rights regarding his son, L.Y. (Lucas).[2] The Division of Child Protection and Permanency (Division) and Lucas's Law Guardian support the judgment. Defendant contends that the Division failed to establish each prong of the best interests test, N.J.S.A. 30:4C-15.1(a). We affirm.

On March 15, 2016, the Division filed a verified complaint for guardianship of Lucas. Judge Timothy W. Chell conducted the guardianship trial over the course of eight days from February

---

[1] We use initials and pseudonyms to protect the parties' privacy interests. R. 1:38-3(e).

[2] Luca's mother, K.Y., voluntarily surrendered her parental rights and is not participating in this appeal.

through July 2017. On July 28, 2017, Judge Chell issued an order terminating defendant's parental rights and awarding the Division guardianship over Lucas. Judge Chell issued a thirty-nine page written decision in support of termination of defendant's parental rights.

We need not detail the circumstances that led to the Division's filing of a guardianship complaint. We incorporate the factual findings and legal conclusions in Judge Chell's July 28, 2017 memorandum and opinion.

We highlight the judge's key findings in support of the termination of defendant's parental rights. Defendant was never Lucas's primary caregiver. Defendant did not establish paternity until Lucas was approximately eighteen months old, shortly after which defendant was either incarcerated or subject to a restraining order precluding visitation with his son. Defendant suffers from substance abuse and anger management issues, has a history of domestic violence against Lucas's mother, K.Y., refused to comply with random drug testing, and admitted to using drugs during the trial, contrary to the conditions of his parole. Defendant lied to treatment providers, Division employees, and the court regarding his criminal history, substance abuse history, and treatment history. He admitted lying to manipulate his treatment providers and engaging in treatment solely to "look good."

A-0480-17T1

The experts on behalf of the Division and the Law Guardian testified at trial that defendant was unable or unwilling to eliminate the harm to Lucas and that permanency through adoption by the maternal grandparents was in Lucas's best interests. We summarize the experts' testimony during the guardianship trial to give context to Judge Chell's order terminating defendant's parental rights.

Dr. James L. Loving, a psychologist for the Division, testified defendant was at "very high risk for drug relapse and drug abuse," and "a[t] risk in the area of domestic violence and violence more generally." Dr. Loving stated these risks, combined with defendant's significant likelihood for re-arrest and re-incarceration, precluded Dr. Loving from opining that defendant could parent Lucas safely or provide a secure, stable home for Lucas in the foreseeable future.

Dr. Loving testified that removing Lucas from the care of his maternal grandparents would "place[] him at high risk for long-term harm." Dr. Loving supported termination of defendant's parental rights and adoption of Lucas by the maternal grandparents.

Dr. Roberta E. Dihoff, a psychologist retained by the Law Guardian, testified that defendant's "inconsistent pattern of reporting issues, . . . apparent lack of insight concerning the seriousness of past issues, as well as the degree of support he

currently has in his daily life, raises a concern about his ability to parent if he were to once again leave the family home."

Dr. Dihoff acknowledged that Lucas was happy and comfortable with both defendant and the maternal grandparents. Dr. Dihoff observed that "[w]hile [defendant] shares an affectionate relationship with Lucas, due to many factors it does not have the strength or security" of Lucas's relationship with the maternal grandparents. She concluded, "the bond formed with [the maternal grandparents] prior to [defendant and his family's] involvement is central in [Lucas]'s life and removal from the [maternal grandparents] would jeopardize his emotional well-being" and "cause significant distress."

Dr. Dihoff testified that defendant's ability to be an adequate parent to Lucas was "a very difficult question." She stated that defendant was doing well, but his history of drug use, and the extent and variety of drugs he used, put him in a statistically high-risk group for relapse.

With respect to the best interests of the child, Dr. Dihoff testified the critical considerations are the age of the child, how long the child has lived with each caretaker, and the level of support the child would have if the "primary attachment" were to be disrupted. She pointed out that Lucas was in preschool and spent most of his life with the maternal grandparents. Dr. Dihoff

A-0480-17T1

testified it was "unlikely," even if defendant maintained sobriety and increased visits with Lucas, that defendant could form a bond with Lucas as strong as his bond with the maternal grandparents. Dr. Dihoff opined that allowing the maternal grandparents to adopt Lucas would not do more harm than good.

Dr. Chester E. Sigafoos, a psychologist retained by defendant, also testified. Dr. Sigafoos stated that, despite diagnosing defendant with opioid abuse disorder, alcohol abuse disorder, and anxiety, he believed defendant was capable of parenting Lucas. According to Dr. Sigafoos, being an addict was not an impediment to being a good parent, as long as the parent stays sober. He concluded that defendant was able to safely parent Lucas based upon "[his] experience working in these types of cases, seeing what [defendant] has gone through throughout his life to where he's gotten himself now and that he is maintaining proper behavior."

Dr. Sigafoos's conclusions were based upon defendant's reporting that he was sober and attending programs. However, when confronted with defendant's positive drug tests, Dr. Sigafoos stated his opinion was not changed because "test results can be flawed." Dr. Sigafoos indicated that the history of substance abuse in his expert report was based on his interview with defendant. Even if a false history of drug use was provided by

defendant, Dr. Sigafoos suggested that it would not alter his evaluation.

With respect to termination of defendant's parental rights, Dr. Sigafoos concluded that termination would result in "serious and enduring harm." Dr. Sigafoos, recognizing the bond between Lucas and the maternal grandparents, recommended "shared custody" of Lucas by defendant and the maternal grandparents.

In addition to the testimony of the experts, Judge Chell considered the testimony of the maternal grandparents, defendant, and defendant's father.

In his detailed opinion, Judge Chell found defendant "lacked any credibility" in light of his well-documented and admitted history of lying to supervisors, treatment providers, the Division, and the court. The judge found Dr. Sigafoos to be less credible than Drs. Loving and Dihoff. The judge found Drs. Loving and Dihoff to be clear and even-handed in their testimony. As a result, Judge Chell accorded greater weight to the testimony of Drs. Loving and Dihoff.

The judge also analyzed each of the prongs of the best interests test. N.J.S.A. 30:4C-15.1(a).

Based on the credible, clear, and convincing evidence, as to prong one, Judge Chell noted concerns about defendant's ability to provide safe and effective parenting due to defendant's

substance abuse and acts of domestic violence. The judge concluded that defendant poses a high risk of re-arrest and re-incarceration attributable in part to his extensive and lengthy history of drug use. The judge found defendant was unlikely to maintain sobriety and provide a stable home for Lucas. The judge determined that Lucas's "safety, health, and development have been and will continue to be endangered by the parental relationship with [defendant]."

With respect to prong two, Judge Chell found defendant's high risk of relapse and re-incarceration would cause harm to Lucas. The judge concluded defendant was unable or unwilling to remove that harm. The judge further found that delaying permanent placement or removing Lucas from the care of the maternal grandparents, who have been his primary caregivers for almost his entire life, would cause lasting harm. Relying on the testimony of Drs. Loving and Dihoff, Judge Chell concluded the chaotic home situation during Lucas's young life, prior to his living with the maternal grandparents, made the need for future permanency and security crucial. All three experts testified that Lucas was attached to the maternal grandparents. Drs. Loving and Dihoff testified that removal from the care of the maternal grandparents would cause serious and permanent harm to Lucas.

With respect to prong three, Judge Chell found the Division made reasonable efforts to reunite the family and provide adequate services to defendant to achieve reunification. The judge noted the Division provided services to defendant, including substance abuse assessment and counseling, batterer's counseling, and drug testing, and coordinated visitation between defendant and Lucas as soon as defendant was released from prison. However, defendant did not always comply with the offered services and had relapsed by continuing to use drugs during the guardianship trial.

With respect to prong four, Judge Chell found the risks posed by defendant would increase significantly once defendant was no longer supervised by the Division and his parole officer. Based on defendant's non-compliance with services and inability to stay sober, the judge found "if [Lucas] were reunified with his father there is a very high risk that the reunification would be very short term and unsuccessful," concluding "[d]efendant does not have the ability to safely parent [Lucas]." Judge Chell determined that the maternal grandparents would mitigate any confusion, sadness, or harm that might be experienced by Lucas subsequent to the termination of defendant's parental rights. Thus, the judge concluded that termination of defendant's parental rights will not do more harm than good to Lucas.

A-0480-17T1

Having considered the testimony and having reviewed the documentary evidence, Judge Chell found the Division satisfied all four prongs of the best interests test and terminated defendant's parental rights.

On appeal, defendant argues: (1) the trial judge failed to consider alternatives to the termination of his parental rights; (2) the Division failed to make reasonable efforts toward reunification while defendant was incarcerated; (3) the trial judge erred in finding termination would not do more harm than good; (4) the Division failed to prove defendant could not become a fit parent in the foreseeable future; and (5) the Division failed to prove that defendant's relationship with Lucas caused harm or would continue to cause harm.

Our review of a decision terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Although we are not bound by the trial court's legal conclusions, N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010), we will affirm a Family Part's decision to terminate parental rights when substantial, credible evidence in the record supports the court's findings.

N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). When considering termination of parental rights, the court focuses on the "best interests" of the child. In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999).

In striking a balance between a parent's constitutional rights and the child's fundamental needs, courts employ a four-prong test, which requires clear and convincing evidence that:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his [or her] resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

These four criteria "are neither discrete nor separate, but are interrelated and overlap." N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 479 (App. Div. 2012). Together they

11

"provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348.

Defendant argues that the judge failed to consider alternative arrangements in lieu of terminating his parental rights. Defendant contends the judge should have considered permanent placement with the maternal grandparents but without termination of his parental rights.

Having reviewed the record, we find that Judge Chell considered the testimony presented as to potential alternatives to termination. Defendant's expert proffered the potential for shared custody of Lucas between the maternal grandparents and defendant. However, Drs. Loving and Dihoff noted such a custody arrangement would be confusing and difficult for Lucas.

On appeal, defendant suggests the judge failed to consider leaving custody of Lucas with the maternal grandparents but maintaining his parental rights. However, defendant offered no testimony that such an arrangement was in Lucas's best interests. Indeed, defendant failed to present any testimony for the judge to consider and evaluate as an alternative to termination of his parental rights.[3]

---

[3] We note that the maternal grandparents seek to adopt Lucas. Absent termination of defendant's parental rights, Lucas will be unable to achieve permanency and stability through adoption by his

Based on our review of the record, we affirm for the reasons expressed by Judge Chell in his comprehensive and well-reasoned written decision, dated July 28, 2017, reviewing the testimony and evidence and finding the Division proved all four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a), to support termination of defendant's parental rights. The judge's factual findings are supported by substantial credible evidence in the record. See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). Defendant's arguments are without sufficient merit to warrant further discussion. R. 2:11-(e)(1)(e).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

grandparents. See K.H.O., 161 N.J. at 357 (finding that "the child's need for permanency and stability emerges as a central factor" in guardianship and adoption cases).